**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| MILLER AUTO TECHNOLOGY LLC,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES, U.S. CUSTOMS AND BORDER PROTECTION, and RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection,<br><br>Defendants. | Court No. 26-03836 |

**COMPLAINT**

1. MILLER AUTO TECHNOLOGY LLC ("Plaintiff") is an importer, as defined in 19 C.F.R. § 101.1, of merchandise into the U.S. subject to the challenged duties.

2. Beginning in February of 2025, through a series of executive orders, the President invoked the International Emergency Economic Powers Act ("IEEPA") as authority to impose new and substantial tariffs ("IEEPA duties") on goods imported from nearly every foreign country, including countries from which Plaintiff sources their imports and transport imports on behalf of their customers. Plaintiff is responsible for paying these tariffs on the imported goods.

3. On February 20, 2026, the U.S. Supreme Court struck down these tariffs, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Res., Inc. v. Trump*, 607 U.S. ___, 146 S. Ct. 628, 646 (2026) (consolidated with *Trump v. V.O.S. Selections, Inc.*, No. 25-250), *aff'g V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312, 1338 (Fed. Cir. 2025) (en banc).

4. The Supreme Court also confirmed that challenges to the IEEPA tariffs fall "within the exclusive jurisdiction of" the Court of International Trade. *Id.* at 637 n.1. Thus, this Court has jurisdiction and authority to order remedial relief and refunds of IEEPA duties paid by importers.

5. Accordingly, for the reasons set out in *Learning Resources*, Plaintiff seeks a full refund from Defendants of all IEEPA duties Plaintiff has paid to the United States.

6. This action is necessary because, even though the Supreme Court has held the IEEPA duties unlawful, Plaintiff is not guaranteed a refund of the duties it has paid absent its own judgment and an order of this Court granting relief. The need for relief is also urgent: the entries on which Plaintiff paid IEEPA duties are liquidating—and may attain finality as a matter of law—and CBP has advised that it does not intend to extend liquidation for entries subject to the IEEPA duties.

**PARTIES**

7. Plaintiff is a U.S. Company located and Incorporated/Formed in Texas. Plaintiff is the importer of record for entries of merchandise on which IEEPA duties were paid.

8. Defendant United States received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

9. Defendant United States Customs and Border Protection ("CBP") is a component agency of the U.S. Department of Homeland Security headquartered in Washington, D.C. CBP is responsible for border security and collecting tariffs or duties and taxes on goods imported into the United States.

10. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

11. Defendants are referred to collectively in this complaint as "Defendants."

## JURISDICTION

12. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). *See Learning Res.*, 146 S. Ct. at 637 n.1.

13. This Court has the same powers at law, in equity, and as conferred by statute as a United States District Court. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the United States and can order any other appropriate civil relief. 28 U.S.C. §§ 2643(a)(1), (c)(1).

14. Plaintiff has standing to bring this lawsuit because they are the importers of goods imported into the United States from countries subject to the IEEPA duties as implemented and collected by CBP that have been held by the Supreme Court to be unlawful. As a result of the executive orders identified in this lawsuit, Plaintiff has paid IEEPA duties to the United States and thus have suffered injury caused by those orders. The relief Plaintiff seeks from this Court would redress those injuries.

## TIMELINESS

15. An action brought in this Court under 28 U.S.C. § 1581(i) must be commenced within two years after the cause of action first accrues. 28 U.S.C. § 2636(i).

16. This action is timely because it was commenced within two years of the executive orders implementing the IEEPA duties and within two years of Plaintiff's payment of those duties.

## GENERAL PLEADINGS

### I. The President Orders a Series of Tariffs, Invoking IEEPA for His Authority.

#### A. The IEEPA duties

17. On February 1, 2025, the President issued three executive orders imposing tariffs on imports from Canada, Mexico, and China. Each executive order was premised on IEEPA authorizing the tariffs.

18. The executive order directed at Mexico, Exec. Order No. 14,194, Imposing Duties to Address the Situation at Our Southern Border, 90 Fed. Reg. 9,117 (Feb. 7, 2025), imposed an additional 25% tariff on the import of goods from Mexico, with certain exceptions.

19. The executive order directed at Canada, Exec. Order No. 14,193, Imposing *Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025), also imposed a 25% tariff, with certain exceptions.

20. Finally, the executive order directed at China, Exec. Order No. 14,195, Imposing *Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China,* 90 Fed. Reg. 9,121 (Feb. 7, 2025) ("China Tariff Order"), imposed an additional 10% *ad valorem* tariff on products from China imported into the United States on top of existing duties.

21. Four days later, on February 5, 2025, the President issued another order, Exec. Order No. 14,200, Amendment *to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,277 (Feb. 11, 2025).

22. The next month, on March 3, 2025, the President amended the China Tariff Order again through Exec. Order No. 14,228, Further Amendment *to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025) ("March 3 Amendment"). The March 3 Amendment raised the incremental tariffs on imports from China to 20%.

23. On April 2, 2025, citing trade deficits with our trading partners as a national emergency, the President issued Exec. Order No. 14,257, Regulating *Imports with a Reciprocal*

*Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025) ("Reciprocal Tariff Order"). The Reciprocal Tariff Order imposed a 10% baseline tariff on nearly all imports to the United States, effective April 5, and additional "reciprocal" tariffs on 57 countries, effective April 9. *Id*. at Annex I. These higher country-specific tariffs range from 11% to 50%. *Id*.

24. On April 8, 2025, the President responded to retaliatory tariffs from China by raising the reciprocal tariff rate on China by 50 percentage points—from 34% to 84%. Exec. Order No. 14,259, Amendment to Reciprocal *Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15,509 (Apr. 14, 2025).

25. The next day, the President suspended for 90 days the higher country-specific tariffs on all countries except for China, for which he raised the "reciprocal" tariff again—from 84% to 125%. Exec. Order No. 14,266, Modifying *Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg. 15,625 (Apr. 15, 2025). Meanwhile, the 20% tariff on imports from China remained in place, such that most imports from China faced a minimum 145% IEEPA tariff.

26. Through these executive orders, the President directed changes to the Harmonized Tariff Schedule of the United States, requiring that goods subject to the challenged tariffs be entered under new tariff codes.

27. On April 14, 2025, several companies filed an action in this Court challenging the legality of these tariff orders. *See* Compl., *V.O.S. Selections, Inc. v. Trump*, No. 25-00066 (Ct. Int'l Trade Apr. 14, 2025), ECF No. 2. This Court held the orders were unlawful and the Federal Circuit, sitting *en banc*, affirmed. It was the Federal Circuit's decision that was, in turn, affirmed by the Supreme Court on February 20, 2026.

28. In the months following the *V.O.S. Selections* complaint, the President, invoking IEEPA, issued additional executive orders imposing additional tariffs and modifying others.

29. CBP continued to collect duties imposed by the IEEPA executive orders ("Challenged Tariff Orders") while the *V.O.S. Selections* litigation and related litigation remained pending, and only just announced on February 22, 2026, that duties imposed under the Challenged Tariff Orders "will no longer be collected for goods entered for consumption or withdrawn from warehouse for consumption, on or after 12:00 a.m. eastern time on February 24, 2026." Cargo Systems Messaging Service Message # 67834313, *Ending Collection of International Emergency Economic Powers Act Duties (Feb. 22, 2026).*

30. By this complaint, Plaintiff seeks relief as a result of all duties they have paid or will pay to the United States arising from the Challenged Tariff Orders.

**B. CBP's implementation of the tariffs.**

31. CBP is charged with the assessment and collection of duties, including the IEEPA duties. *See* 19 U.S.C. §§ 1500, 1502.

32. In 1988, Congress enacted the Omnibus Trade and Competitiveness Act of 1988, which adopted the new tariff nomenclature: the Harmonized Tariff Schedule of the United States ("HTSUS"). Pub. L. No. 100-418, 102 Stat. 1107 (1988). CBP classifies merchandise imported into the United States consistent with the HTSUS, which sets out the tariff rates and statistical categories using a series of nested chapters, headings, and subheadings. 19 U.S.C. § 1202. The primary headings of the HTSUS describe broad categories of merchandise, while its subheadings provide a particularized division of the goods within each category. *Id.*

33. CBP's regulations govern the classification and appraisement of merchandise, consistent with the HTSUS. 19 C.F.R. § 152.11 ("Merchandise shall be classified in accordance

with the Harmonized Tariff Schedule of the United States (19 U.S.C. § 1202) as interpreted by administrative and judicial rulings.”).

34. The United States International Trade Commission (“USITC”) publishes and maintains the HTSUS consistent with presidential orders. 19 U.S.C. §§ 1202, 3005, 3006; *see also Michael Simon Design, Inc. v. United States*, 33 C.I.T. 1003, 1010 (2009) (“The authority to modify the HTSUS lies with the President”); *Maple Leaf Marketing, Inc. v. United States*, 582 F. Supp. 3d 1365, 1378–79 (Ct. Int’l Trade 2021).

**C. Liquidation**

35. “‘Liquidation’ means the final computation or ascertainment of duties on entries for consumption or drawback entries.” 19 C.F.R. § 159.1.

36. Typically, when goods enter (*i.e.*, are imported into) the United States, the importer of record pays an estimated duty on the *entry* based on its customs declaration, which asserts a value, origin, and HTSUS classification for the imported goods. *See* 19 U.S.C. § 1484. CBP then reviews the customs declaration and may inspect the goods.

37. CBP then fixes the final appraisement of merchandise by confirming the final value, classification, duty rate, and final amount of duty for the imported goods. *See* 19 U.S.C. § 1500.

38. Once the final amount of duty is determined by CBP, CBP “liquidates” the entry and notifies the importer of record as to whether they owe more money or are entitled to a refund. *See* 19 U.S.C. § 1504(b).

39. Liquidation—unless extended—must happen within one year. *See* 19 U.S.C. § 1504(a). Typically, CBP liquidates entries 314 days after the date of entry of the goods (automatic liquidation cycle) and will post a notice on its website. 19 C.F.R. § 159.9.

40. CBP has discretion to extend the deadline for liquidation for up to one year pursuant to an importer's request and a showing of good cause. *See* 19 U.S.C. § 1504(b)(2); 19 C.F.R. § 159.12(a)(1)(ii).

41. Once liquidation has occurred, and *if* the liquidation is protestable, an importer of record has 180 days to file a protest contesting the liquidation, asking CBP to "reliquidate" the duties. *See* 19 U.S.C. § 1514.[1] But not all liquidations are protestable: where CBP acts in a ministerial capacity (*i.e.*, without discretion) in imposing a duty, the entry's liquidation cannot be protested. *Id.*; *see also Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024).

42. In *AGS Co. Auto. Sols. v. U.S. Customs & Border Prot.*, Consol. Court No. 25-00255, 813 F. Supp. 3d 1298 (Ct. Int'l Trade 2025) ("*AGS*"), a three-judge panel of this Court confirmed the authority of this Court to reliquidate entries subject to the IEEPA duties. In a related action, the government has represented that it "will not oppose the Court's authority to order reliquidation of entries of merchandise subject to the challenged IEEPA duties and that they will refund any IEEPA duties found to have been unlawfully collected." Joint Stip. ¶ 2, *Princess Awesome, LLC v. U.S. Customs & Border Prot.*, No. 25-00078 (Ct. Int'l Trade May 28, 2025), ECF No. 17.

## II. The Supreme Court Has Held the IEEPA Duties Are Not Authorized.

43. On May 28, 2025, a three-judge panel of this Court granted summary judgment to the plaintiffs in *V.O.S. Selections* and permanently enjoined the government from enforcing the IEEPA duties at issue in that case. That decision was appealed to the Court of Appeals for the Federal Circuit.

44. The Federal Circuit stayed this Court's decision and injunction and ordered an

[1] CBP can also voluntarily reliquidate within 90 days of the liquidation. *See* 19 U.S.C. § 1501.

expedited briefing schedule and hearing.

45. Sitting *en banc*, the Federal Circuit issued its decision on August 29, 2025, affirming this Court's decision that the IEEPA duties are unlawful. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

46. In a separate lawsuit filed by a separate group of importers, the U.S. District Court for the District of Columbia held that IEEPA does not authorize tariffs of any sort. *See Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025). That decision was appealed to the Court of Appeals for the D.C. Circuit, but before the D.C. Circuit held argument, the United States Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources*. The cases were consolidated, with argument on November 5, 2025.

47. On February 20, 2026, the Supreme Court issued its opinion in both cases, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Res.*, 146 S. Ct. at 646.

## III. Plaintiff Paid IEEPA Duties.

48. As of the date of this complaint, Plaintiff has paid IEEPA duties imposed by the Challenged Tariff Orders.

49. The goods Plaintiff imported into the United States that are subject to IEEPA tariffs entered the United States under new HTSUS codes from foreign countries.

50. Plaintiff has paid IEEPA duties on numerous entries.

## COUNT I
## THE CHALLENGED TARIFF ORDERS ARE UNLAWFUL FOR THE REASONS STATED BY THE SUPREME COURT IN *LEARNING RESOURCES*

51. Plaintiff incorporates paragraphs 1–50 above by reference.

52. In *Learning Resources*, the Supreme Court considered challenges to the President's authority to impose tariffs under IEEPA, including this Court's ruling in *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350, 1383 (Ct. Int'l Trade 2025), and the Federal Circuit's affirmance of that ruling, 149 F.4th 1312, 1338 (Fed. Cir. 2025) (holding that the President exceeded his authority under IEEPA, 50 U.S.C. §§ 1701–1702, when he imposed tariffs on imported goods). The Supreme Court held that all tariffs imposed under IEEPA are unlawful. In the Court's words, "[o]ur task … is to decide only whether the power to 'regulate . . . importation,' as granted to the President in IEEPA, embraces the power to impose tariffs. It does not." *Learning Res.*, 146 S. Ct. at 644–45. The Supreme Court thus affirmed the Federal Circuit's decision on the merits.

53. The Challenged Tariff Orders purport to impose duties and modify the Harmonized Tariff Schedule of the United States solely under IEEPA.

54. In its motion to the Federal Circuit in *V.O.S. Selections* to stay the CIT's judgment, CBP confirmed that "[i]f tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any postjudgment interest that accrues." Gov't Mot. Stay Pending Appeal at 25, *V.O.S. Selections, Inc. v. Trump*, No. 25-1812 (Fed. Cir. May 29, 2025), ECF No. 6 (quoting *Sunpreme Inc. v. United States*, 2017 WL 65421, at *5 (Ct. Int'l Trade Jan. 5, 2017) ("there is virtually no risk to Plaintiff that it would not be made whole should it prevail")).

55. The Government made materially identical representations in the related litigation, advising that it would "issue refunds" of the IEEPA duties and that plaintiffs were "guaranteed payment . . . should the Court's decision be upheld," and representing that it does

not oppose this Court's authority to order reliquidation of entries subject to the IEEPA duties. *See* Defs.' Mot. Stay Prelim. Inj. Pending Appeal at 13, *Learning Res., Inc. v. Trump*, No. 25-cv-01248-RC (D.D.C. June 2, 2025), ECF No. 41; Joint Stip. ¶ 2. Having obtained stays of injunctive relief on the strength of those assurances, the Government is judicially estopped from now contesting this Court's authority to order refunds of the IEEPA duties. *See AGS,* 813 F. Supp. 3d at 1300–02; *Sumecht NA, Inc. v. United States*, 923 F.3d 1340, 1348 (Fed. Cir. 2019).

56. Independent of these representations, due process requires the Government to refund duties it has unlawfully exacted. *See McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 36–39 (1990).

57. This Court is bound by the *Learning Resources* decision and as a result of that decision should order refunds of all IEEPA duties paid by Plaintiff, with interest as provided by law.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court:

a) declare that the Challenged Tariff Orders are unlawful and void as applied to Plaintiff and that CBP lacks authority to assess or collect IEEPA duties from Plaintiff;

b) enter a money judgment against the United States and order a payment to Plaintiff in the amount of Plaintiff's IEEPA duties paid, plus interest, including post-judgment interest under 28 U.S.C. § 1961;

c) in the alternative, order CBP to reliquidate any entries that have been liquidated with IEEPA duties;

d) order CBP to liquidate all unliquidated entries subject to IEEPA duties

without IEEPA duties;

e) order the United States to refund to Plaintiff the duties collected from Plaintiff on all entries subject to IEEPA duties, with interest as provided by law;

f) award Plaintiff their reasonable costs, including attorneys' fees, incurred in bringing this action; and

g) grant such further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Scott Johnston
Scott Johnston
Matias Gallegos
Ayesha Durrani
Aaron Harting

GIVENS & JOHNSTON, PLLC
950 Echo Lane, Ste. 360
Houston, TX 77024
sj@gjatradelaw.com
*Counsel for Plaintiff*